UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN LEE HUDSON,

        Petitioner,                         Hon. Paul L. Maloney

v.                                          Case No. 1:07-CV-1155

DEBRA SCUTT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Respondent's Motion to Dismiss, (dkt. #54), and Petitioner's Motion for Equitable Tolling, (dkt. #67).  In accordance with 28 U.S.C. § 636(b), the undersigned recommends that Respondent's motion be **granted in part and denied in part** and Petitioner's motion be **denied**.  The undersigned further recommends that Hudson's petition for writ of habeas corpus be **denied** and this matter **terminated**.

## BACKGROUND

        On July 7, 2004, Petitioner pleaded guilty to one count of first degree criminal sexual conduct and one count of first degree home invasion.  (Plea Transcript, July 7, 2004, 3-5).  Petitioner was sentenced to serve 285 to 570 months in prison on the criminal sexual conduct conviction as well as a consecutive sentence of 140 to 240 months in prison on the home invasion conviction.  (Sentence Transcript, July 28, 2004, 7-9).  Petitioner later filed in the trial court a motion to vacate his sentence which was denied.  *People v. Hudson*, Case No. 03-2258-FC, Opinion and Order

(Jackson Cnty. Cir. Ct., May 24, 2006). Petitioner subsequently moved in the Michigan Court of

Appeals for leave to appeal his sentence, asserting the following issues:

> I.    Did the trial court clearly err in determining that the
>       sentencing guidelines relied upon at sentencing were
>       misscored in violation of defendant-appellant's
>       constitutional right to be sentenced on the basis of
>       accurate information?
>
> II.   Was the sentencing guidelines range enhanced by the
>       scoring of offense variables on the basis of facts not
>       proven to a jury beyond a reasonable doubt nor
>       admitted by the defendant in support of his guilty
>       plea, in violation of the Sixth and Fourteenth
>       Amendments of the United States Constitution?
>
> III.  Did the trial court improperly assume defendant-
>       appellant's guilt of torturing and killing animals as a
>       juvenile, an offense for which he was not adjudicated,
>       contrary to his due process rights under the state and
>       federal constitutions to be sentenced on the basis of
>       accurate information?

Petitioner's request was denied "for lack of merit in the grounds presented." *People*

*v. Hudson*, Case No. 273615, Order (Mich. Ct. App., Jan. 30, 2007). Asserting the same three

claims, Petitioner challenged this determination in the Michigan Supreme Court, but his application

for leave to appeal was denied. *People v. Hudson*, Case No. 133346, Order (Mich., June 26, 2007).

On November 16, 2007, Petitioner initiated the present action seeking habeas relief

based on the same arguments he pursued on direct appeal in state court. (Dkt. #1). On June 24,

2008, Petitioner moved to stay the present action so that he could return to state court to properly

exhaust two additional claims he wished to assert in this Court. (Dkt. #33). The Honorable Paul

L. Maloney denied Petitioner's request on the ground that Petitioner had failed to satisfy the

standard for such relief. (Dkt. #41). Petitioner later moved for reconsideration of this decision on

the ground that he had already filed in the state court a motion for relief from judgment. (Dkt. #43). Judge Maloney granted Petitioner's motion for reconsideration, ordering that this action be administratively closed "pending exhaustion of Petitioner's claim in state court." (Dkt. #47). In his motion for relief from judgment, Petitioner asserted the following two claims:

> I.     Defendant's guilty plea was invalid due to ineffective assistance of trial counsel where counsel failed to investigate and present an insanity defense and/or request an independent expert where the forensic center's use of an erroneous standard for determining whether Defendant was criminally responsible tainted the assessment of his criminal responsibility.

> II.     Defendant's Sixth Amendment constitutional right to effective assistance of counsel was violated by his appellate counsel's failure to raise the issue herein related to ineffective assistance of trial counsel.

Petitioner's motion for relief from judgment was denied by the trial court on December 10, 2008. (Dkt. #62). Specifically, the court did not rule on the merits of Petitioner's claims but instead determined that Petitioner's "request for relief is barred by MCR 6.508(B)." *Id.* Petitioner unsuccessfully appealed this determination to the Michigan Court of Appeals. *People v. Hudson*, Case No. 292918, Order (Mich. Ct. App., Oct. 2, 2009). Further appeal of this matter was denied by the Michigan Supreme Court on September 9, 2010. *People v. Hudson*, Case No. 140054, Order (Mich., Sept. 9, 2010). Petitioner did not seek review of this determination by the United States Supreme Court. More than seven months later, Petitioner filed an amended petition for writ of habeas corpus in this Court. (Dkt. #48).

Respondent now moves to dismiss Hudson's amended petition for writ of habeas corpus on the ground that such is untimely. Petitioner responds by conceding that his amended petition is untimely, but that the Court should overlook such based on principles of equitable tolling.

3

For the reasons discussed herein, the undersigned recommends that Respondent's motion to dismiss be granted in part and denied in part and that Petitioner's request for equitable tolling be denied. The undersigned further recommends that Hudson's timely filed claims be denied on the merits and this action terminated.

## ANALYSIS

**I.**          **Respondent's Motion to Dismiss and Petitioner's Motion for Equitable Tolling**

Hudson's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  Among other things, the AEDPA amended 28 U.S.C. § 2244 to include a one-year limitations period within which an inmate challenging a state court judgment must file his petition for writ of habeas corpus.  The applicable statute of limitations provides the following:

> (d)(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

>    (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
>    (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244.

In most instances, including the present case, § 2244(d)(1)(A) provides the operative date from which the one-year statute of limitations is measured.  *See Dodd v. United States*, 545 U.S. 353, 357 (2005).  Pursuant to this provision, the one-year limitations period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

As previously noted, Petitioner initiated the present action on November 16, 2007, seeking habeas relief based on the same claims he presented on direct appeal in state court. Petitioner subsequently moved to stay the present action so that he could return to state court to exhaust two additional claims.  Judge Maloney initially denied Petitioner's request, but later granted Petitioner's motion for reconsideration on the ground that Petitioner had already filed in the state court a motion for relief from judgment which served to toll the federal habeas statute of limitations. In his Order granting Petitioner's motion for reconsideration, Judge Maloney warned that:

>    Once Petitioner exhausts the claim in state court, the clock on the one year period of limitation will restart.  Once the clock restarts, Petitioner may return to federal court any time before the one year period of limitation expires and attempt to amend his petition to exhaust the claims currently pending in state court.

For purposes of the federal habeas statute of limitations, Petitioner's conviction became final, and the one year statute of limitations began to run, on September 24, 2007.  As Judge

Maloney indicated, the statute of limitations, with respect to the two additional claims Petitioner sought to exhaust in state court, was tolled by the August 4, 2008 filing in state court of Petitioner's motion for relief from judgment.  As of that date, only fifty (50) days remained before the statute of limitations expired.  Petitioner's efforts to exhaust the two additional claims in question was completed on September 9, 2010, when the Michigan Supreme Court denied Petitioner's request for relief.  Thus, the statute of limitations resumed running on September 10, 2010, and expired on November 1, 2010.

As noted above, when Judge Maloney granted Petitioner's request for a stay he expressly warned Petitioner that "[o]nce Petitioner exhausts the claim in state court, the clock on the one year period of limitation will restart."  The court further warned Petitioner that "[o]nce the clock restarts, Petitioner may return to federal court any time before the one year period of limitation expires and attempt to amend his petition to exhaust the claims currently pending in state court."  Despite such clear warnings, Petitioner did not return to this Court and seek to amend his habeas petition until April 25, 2011.  By that time, however, the statute of limitations had long since expired.  Accordingly, Respondent moves to dismiss Hudson's petition for violation of the statute of limitations.  Petitioner concedes that the statute of limitations had expired by the time he submitted his amended petition in this Court, but nevertheless asserts that his amended petition should be accepted for filing because he is entitled to equitable tolling of the statute of limitations.

The AEDPA's statute of limitations is "not jurisdictional" and does not establish "an inflexible rule requiring dismissal whenever AEDPA's one-year clock has run."  *Day v. McDonough*, 547 U.S. 198, 205-08 (2006).  Instead, the AEDPA statute of limitations is subject to equitable tolling.  *See Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010).  To establish entitlement

to equitable tolling, however, a petitioner must establish that he has been "pursuing his rights diligently" and, moreover, that "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562; *Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011). While Respondent bears the burden of demonstrating that the statute of limitations has expired, Petitioner bears the burden of establishing that he is entitled to equitable tolling. *See Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011).

Petitioner asserts that he is entitled to equitable tolling because (1) he "relies on the assistance of a prison legal writer" and (2) he "is mentally ill." That an individual on whom a litigant relies for assistance fails to timely render such assistance is not a sufficient basis for invoking equitable tolling. *See, e.g., Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007). As for Petitioner's argument that he is mentally ill, while mental incompetence which *causes* a failure to comply with the statute of limitations may entitle a petitioner to the benefits of equitable tolling, "a blanket assertion of mental incompetence is insufficient to toll the statute of limitations." *Scutt*, 662 F.3d at 742. Instead, Petitioner must demonstrate that there exists "a causal link between the mental condition and [his] untimely filing." *Id.* While Petitioner may suffer from a mental illness, he has failed to establish that he is mentally incompetent. Furthermore, Petitioner has failed to establish a causal connection between his alleged mental illness and his failure to comply with the statute of limitations. Accordingly, the Court concludes that Petitioner is not entitled to equitable tolling of the statute of limitations.

This conclusion does not, however, compel the dismissal of all of Hudson's habeas claims as Respondent asserts. The claims which Petitioner advanced in his original petition were timely filed and Respondent has articulated no basis for failing to address such on the merits. The

only claims that are untimely presented are the two additional claims which Petitioner pursued in his motion for relief from judgment and which Petitioner now seeks to have heard in this Court. The appropriate response is not to dismiss Hudson's petition in its entirety, but rather to simply deny his attempt to amend his petition to assert the two untimely filed claims.

Accordingly, the undersigned recommends that Petitioner's motion for equitable tolling be denied. The undersigned further recommends that Respondent's motion to dismiss be granted in part and denied in part. Specifically, the undersigned recommends that Petitioner's amended petition be rejected on statute of limitations grounds and that Hudson's original petition be considered on the merits.[1]

## II.        Hudson's Original Petition

As previously noted, in his original petition Hudson asserted three claims all related to the calculation of his prison sentence. These claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)        An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1)        resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[1] As detailed below, even if the additional (and untimely) claims asserted in Hudson's amended petition are considered the result is the same as such claims are without merit.

> Federal law, as determined by the Supreme Court of the United States, or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at

411.   Rather, the Court must also find the state court's application thereof to be *objectively*

unreasonable.  *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.  Accordingly, a state court

unreasonably applies clearly established federal law if it "identifies the correct governing legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal

principle from the Supreme Court precedent to a new context." *Ayers,* 623 F.3d at 307.

Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that

adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8

(Apr. 4, 2011).

> Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state

court was based on an unreasonable determination of the facts in light of the evidence presented, the

"factual determination by [the] state courts are presumed correct absent clear and convincing

evidence to the contrary." *Ayers*, 623 F.3d at 308.  Accordingly, a decision "adjudicated on the

merits in a state court and based on a factual determination will not be overturned on factual grounds

unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

While this standard is "demanding" it is "not insatiable." *Id.*

> For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly

established federal law "as set forth by the Supreme Court at the time the state court rendered its

decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007).  This definition of "clearly

established federal law" includes "only the holdings of the Supreme Court, rather than its dicta."

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  Nevertheless, "the decisions of lower federal

courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

The claims advanced in Hudson's original petition all challenge the calculation of his prison sentence. Specifically, Petitioner advances three distinct claims: (1) the sentencing guidelines were miscalculated in violation of Michigan law; (2) the sentencing guidelines were calculated on the basis of inaccurate information; and (3) the sentencing guidelines score was

enhanced on the basis of facts not found beyond a reasonable doubt by a jury in violation of *Blakely v. Washington*, 542 U.S. 296 (2004).


A.      State Law Claims

Petitioner's claim that his sentence is invalid because his guideline score was miscalculated in violation of Michigan law is not cognizable in a federal habeas corpus proceeding. *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).  Thus, this claim raises no issue on which habeas relief may be granted.


B.      Right to be Sentenced on the Basis of Accurate Information

Petitioner argues that he is entitled to relief because the trial judge considered inaccurate information when determining his sentence.  Specifically, Petitioner asserts that the trial judge improperly considered allegations that he previously tortured and killed animals, a crime for which he was never convicted.

It has long been recognized that when imposing sentence, "courts have broad discretion to consider various kinds of information."  *United States v. Watts*, 519 U.S. 148, 151 (1997); *see also*, *Roberts v. United States*, 445 U.S. 552, 556 (1980) (a "fundamental sentencing principle" is that "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come").  As

the *Watts* Court observed, "[h]ighly relevant - if not essential - to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and circumstances." *Watts*, 519 U.S. at 151-52. Sentencing courts may even consider past criminal behavior which did not result in a conviction, or for which the defendant was never tried. *See Id.* at 152 (citations omitted). Sentences imposed on the basis of "misinformation of constitutional magnitude," however, may present grounds for habeas corpus relief. *Roberts*, 445 U.S. at 556 (citations omitted). To obtain habeas relief, Petitioner must demonstrate that "the information in question was materially false and that the trial court relied on it." *Potter v. Yukins*, 6 Fed. Appx. 295, 296 (6th Cir., Oct. 9, 2007) (citations omitted).

Petitioner is correct that, at sentencing, the trial judge suggested that Petitioner had previously engaged in "the killing and torturing of animals." (Sentencing Transcript, July 28, 2004, 7-8). Petitioner is also correct that the record contains no evidence that he was ever convicted of committing such acts. The sentencing transcript, however, does not support Petitioner's contention that the trial judge considered this alleged behavior when determining his sentence. To the contrary, the trial judge made clear that his sentence was based upon the facts to which Petitioner admitted. (Tr. 3-9). Furthermore, in his Opinion and Order denying Petitioner's motion to vacate his sentence, the trial judge explicitly stated that "[a]lthough reference was made [at sentencing] to charges against the Defendant for which he did not have a conviction, that took no part in the Court's determination of an appropriate sentence." *People v. Hudson*, Case No. 03-2258-FC, Opinion and Order (Jackson Cnty. Cir. Ct., May 24, 2006).

While Petitioner has demonstrated that he was never convicted of torturing or killing animals, he has failed to demonstrate that he never engaged in such conduct. Furthermore, even if

the Court assumes that the allegations in question are inaccurate, Petitioner has failed to demonstrate that the trial judge relied on such when determining his sentence.

Petitioner presented this claim to the trial court on his post-conviction motion to vacate sentence. As noted above, the trial court rejected Petitioner's claim. In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

C.      *Blakely v. Washington*

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Petitioner asserts that his sentence violates this rule because the trial judge, when scoring several of the offense variables, relied upon facts which were neither admitted nor proven beyond a reasonable doubt. Because this claim does not appear to have been addressed on the merits by any state court, the Court will evaluate such *de novo*.

In *Blakely*, the defendant pleaded guilty to second degree kidnaping involving domestic violence and use of a firearm. *Blakely*, 542 U.S. at 298-99. In so doing, Blakely admitted "the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts." *Id.* at 299. Washington law provided that the "standard range" to which

a defendant, convicted of this particular offense, could be sentenced was 49-53 months. However, the sentencing court was permitted to impose a sentence in excess of the "standard range" if it found "substantial and compelling reasons justifying an exceptional sentence." Before imposing an "exceptional sentence," the sentencing court was required to "set forth findings of fact and conclusions of law supporting it." *Id.*

The State recommended that Blakely receive a "standard range" sentence of 49-53 months. *Id.* at 300. The sentencing court rejected this recommendation, however, and, finding that Blakely acted with "deliberate cruelty," imposed an "exceptional" sentence of 90 months. *Id.* at 300-01. As the *Blakely* Court recognized, under Washington law, the court "could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea," but instead could do so only based on the court's additional determination that Blakely acted with "deliberate cruelty." *Id.* at 304. The Court held, therefore, that this sentence violated Blakely's Sixth Amendment right to trial by jury because it was predicated on facts that were neither admitted by Blakely nor found by a jury. *Id.* at 301-05.

The *Blakely* Court, however, made clear that its holding applied only to "determinate-sentencing schemes" such as that employed by the State of Washington. *Id.* at 308-09. The Court recognized that *indeterminate* sentencing schemes do not run afoul of the Constitution because while such schemes may sanction "judicial discretion" in sentencing, they do not accomplish such "at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty." *Id.* at 308-09. As the Court recognized:

> Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a

lesser sentence - and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned. In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10-year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is *entitled* to no more than a 10-year sentence - and by reason of the Sixth Amendment the facts bearing upon that entitlement must be found by a jury.

*Id.* at 309.

As is well recognized, the State of Michigan employs an indeterminate sentencing scheme. *See, e.g., Montes v. Trombley*, 599 F.3d 490, 497 (6th Cir. 2010); *Porter v. Bauman*, 2011 WL 3501814 at *5 (W.D. Mich., Aug. 10, 2011).

Petitioner was convicted of first degree criminal sexual conduct and first degree home invasion. Under Michigan law, conviction of first degree criminal sexual conduct is punishable by imprisonment "for life or for any term of years" and conviction for first degree home invasion is punishable by imprisonment of "not more than 20 years." *See* Mich. Comp. Laws §§ 750.520b, 750.110a. Petitioner was sentenced to serve 285 to 570 months in prison on the criminal sexual conduct conviction and 140 to 240 months in prison on the home invasion conviction. Petitioner's sentences are entirely consistent with Michigan law. Thus, when Petitioner committed his crimes he knew that he could possibly receive sentences of this magnitude. Because Petitioner's sentences were within the range permitted by Michigan law as a result of his convictions, any additional fact-finding in which the trial court may have engaged did not violate Petitioner's rights under *Blakely* or the Sixth Amendment. Thus, this claim raises no issue on which habeas relief may be granted.

**III.**        **Petitioner's Amended Habeas Claims**

As previously discussed, the Court concludes that the additional claims which Petitioner presented in his state court motion for relief from judgment and which he now seeks to assert in this Court are untimely and, therefore, cannot be considered by this Court. However, even if the Court were to consider these claims, the result would be the same as these claims are without merit. Accordingly, the undersigned recommends, in the alternative, that these additional claims be rejected on the ground that they lack merit. Because these particular claims do not appear to have been addressed on the merits by any state court, such claims are reviewed *de novo*.

A.        Voluntariness of Petitioner's Guilty Plea

Petitioner asserts that his guilty plea "was invalid due to ineffective assistance of trial counsel." The Court interprets this statement as asserting two separate claims, namely that his guilty plea was invalid and that he was denied the right to the effective assistance of counsel. The Court will address these claims separately.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with

"sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

As noted above, the *Boykin* Court identified certain rights which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea

will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the result of such a plea"); *United States v. Smith*, 1990 WL 92601 at \*2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

   Accordingly, the relevant question presented by Petitioner's claim is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty.  Rather, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences."  The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea."  *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

   At the plea hearing, the trial judge discussed the matter at length with Petitioner, Petitioner's counsel, and the prosecuting attorney.  The trial judge confirmed that in return for pleading guilty to criminal sexual conduct and home invasion, additional charges of resisting and obstructing and subordination of perjury would be dismissed.  (Plea Transcript, July 7, 2004, 3-4). The trial judge explained to Petitioner the potential penalties he faced for the various crimes with which he was pleading guilty.  Specifically, the trial judge informed Petitioner that he faced life in prison if convicted of first degree criminal sexual conduct and twenty years in prison if convicted of first degree home invasion.  (Tr. 6).

The trial judge informed Petitioner that if he pleaded guilty he would be surrendering the following rights: (1) the right to trial by jury; (2) the right to a bench trial; (3) the right to be presumed innocent until proven guilty; (4) the right to have the prosecution prove his guilt beyond a reasonable doubt; (5) the right to have the witnesses against him appear at trial and be subject to cross-examination; (6) the right to have the court compel the attendance of witnesses on his behalf; (7) the right to remain silent; (8) the right to not have his silence used against him; and (9) the right to testify in his own behalf.  (Tr. 6-8.)  Petitioner acknowledged that he understood and wished to waive these rights.  (Tr. 8.)

Petitioner stated that he had not been threatened to plead guilty and had not been promised anything that was not "set forth on the record."  (Tr. 9.)  The trial judge confirmed that there was no sentencing agreement as part of the plea bargain.  (Tr. 14.)  Finding that Petitioner's no contest plea was "entered into voluntarily," the court accepted Petitioner's plea.  (Tr. 14.)

In light of these facts, Petitioner's argument that his decision to plead guilty was not made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences" is unpersuasive.  Accordingly, this claim raises no issue on which habeas relief may be granted.

B.      Ineffective Assistance of Trial Counsel

Petitioner argues that he was denied the right to the effective assistance of counsel because his trial counsel "failed to investigate and present an insanity defense and/or request an independent expert where the forensic center's use of an erroneous standard for determining whether [Petitioner] was criminally responsible tainted the assessment of his criminal responsibility."

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential

21

one." *Premo*, 131 S.Ct. at 740.  Likewise, the standard by which petitions for habeas relief are judged is "highly deferential."  Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential.  *Id.* (citations omitted).  As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

Prior to pleading guilty, Petitioner was evaluated on several occasions to assess his competency to stand trial as well as to determine whether he was legally insane and, therefore, not criminally responsible for his actions, when he committed the crimes in question.  With respect to the question of Petitioner's criminal responsibility, Jennifer Balay, Ph.D., concluded that "even though [Petitioner] may have been mildly retarded at the time of the alleged offense, he fully understood the nature and quality of the wrongfulness of his actions and was capable of conforming his behavior to the requirements of the law." (Dkt. #63).  Accordingly, Dr. Balay rejected any claim that Petitioner was not criminally responsible for his actions.  *Id.*

As previously noted, Petitioner faults his trial attorney because he allegedly "failed to investigate and present an insanity defense and/or request an independent expert where the forensic center's use of an erroneous standard for determining whether [Petitioner] was criminally responsible tainted the assessment of his criminal responsibility."  The Court notes that under Michigan law, Petitioner bears the burden of establishing that he was legally insane at the time he

committed the crimes in question.  *See People v. Schilling*, 2004 WL 67683 at *2 (Mich. Ct. App., Jan. 15, 2004).

Petitioner's argument that Dr. Balay assessed his criminal responsibility pursuant to an improper standard is without merit.  In her report, Dr. Balay plainly evaluated Petitioner's criminal responsibility pursuant to the standard articulated by Michigan statute.  (Dkt. #63).  Thus, there was no basis for Petitioner's attorney to request that Petitioner be examined by yet another psychiatrist.  As for Petitioner's argument that his attorney "failed to investigate and present an insanity defense," such is belied by the fact that Petitioner's attorney secured the examination and evaluation by Dr. Balay.  (Dkt. #13-22).  Counsel clearly investigated the possibility that Petitioner was legally insane when he committed the crimes in question.  Considering that this investigation revealed no evidence that Petitioner was legally insane, counsel's decision not to further pursue the matter was a reasonable strategic decision.

The Court concludes, therefore, that Petitioner's counsel did not render deficient performance with respect to this issue of Petitioner's criminal responsibility.  Furthermore, even if the Court assumes that counsel rendered deficient performance, Petitioner cannot demonstrate that he was prejudiced thereby as the record contains absolutely no evidence that he was criminally insane at the time he committed the crimes in question.  Accordingly, this claim raises no issue on which habeas relief may be granted.

C.      Ineffective Assistance of Appellate Counsel

Finally, Petitioner asserts that his right to the effective assistance of appellate counsel was denied because his appellate counsel failed to assert on direct appeal the two claims, discussed

immediately above, that Petitioner asserted in his post-conviction motion for relief from judgment. Because these particular issues lack merit, counsel's decision not to assert such on appeal was not deficient. Even if such did constitute deficient performance, Petitioner cannot establish that he was prejudiced thereby as these claims are without merit. Accordingly, this claim raises no issue on which habeas relief may be granted.

## **CONCLUSION**

For the reasons detailed herein, the undersigned recommends that <u>Respondent's Motion to Dismiss</u>, (dkt. #54), be granted in part and denied in part; <u>Petitioner's Motion for Equitable Tolling</u>, (dkt. #67), be denied; and Hudson's petition for writ of habeas corpus be **denied** and this matter **terminated**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 15, 2012

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge